Evan L. Frank, Esq. (311994)
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
efrank@alflaw.net
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Jaclyn Dossick, | : | |
| Plaintiff, | : | Civil Action |
| v. | : | Case No. |
| Temple Faculty Practice Plan, Inc., | : | Jury Trial Demanded |
| Defendant. | : | |
| | : | |

**COMPLAINT**

**Summary**

1. On or about 9-29-25, as part of accommodating Plaintiff's FMLA leave and related health issues, Plaintiff's supervisor relieved her of her responsibilities of managing orthopedics and urology. On 7-10-26, the same supervisor fired Plaintiff and wrote a termination letter citing Plaintiff's failure to "manage Dr. Hullings' schedule" since "approximately October 2025". The problem with that reason is that Dr. Hullings is an orthopedist – the supervisor fired Plaintiff for not performing the same task from which Plaintiff was excused due to FMLA leave. Since Defendant fired Plaintiff and – in writing – relied on Plaintiff's failure to perform the same duty that she was excused from performing due to FMLA leave, Defendant violated 29 C.F.R. 825.220(c) ("employers cannot use the taking of FMLA leave as a negative factor in employment actions …").

2. The termination also occurred 15 days after Plaintiff put a two-week block on the supervisor's calendar titled "Jaclyn surgery". The timing, along with the supervisor relying

on Plaintiff's failure to perform a task from which Plaintiff was excused due to FMLA leave, is suggestive of a retaliatory motive for that future FMLA leave.

**Parties**

3. Plaintiff is an adult individual residing in Pennsylvania.
4. Defendant is a Pennsylvania corporation with a principal place of business in Pennsylvania.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Family and Medical Leave Act.
6. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper under 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2) because the only Defendant is an entity subject to personal jurisdiction in this District.

**Facts**

7. Defendant is a physician practice plan under the umbrella of Temple University Health System (TUHS). It has around 600 – 700 employees, including doctors and staff.
8. Plaintiff was employed by Defendant from December of 2021 until she was terminated on July 10, 2026.
9. In December of 2021, Defendant hired Plaintiff as a Practice Administrator.
10. In August of 2022, Defendant promoted Plaintiff to Senior Administrator.
11. Plaintiff had the role of Senior Administrator for the rest of her employment with Defendant.
12. Plaintiff was responsible for managing multiple divisions, which included onboarding doctors, working with the finance team on budgets and billing, and planning physical moves of practices. Plaintiff managed orthopedics, urology, and otolaryngology.

13. Plaintiff took several FMLA full-time and intermittent leaves during the course of her employment for different reasons including the birth of a child and including breast cancer and its complications.
14. Although Plaintiff took FMLA leave on several occasions for different reasons, she never exceeded the 12 weeks of leave permitted in any year.
15. Most, recently, Plaintiff took intermittent FMLA leave from 9-29-25 through 10-8-25.
16. On 9-29-25, Plaintiff's supervisor relieved Plaintiff from the responsibility of managing orthopedics and urology, as part of accommodating Plaintiff's repeated FMLA leaves and related issues.
17. On 6-25-26, Plaintiff put a two-week block (from 10-12-26 until 10-26-26) on her supervisor's electronic calendar, titled "Jaclyn surgery".
18. Plaintiff verbally told her supervisor that this was for reconstructive surgery before Plaintiff sent the above calendar invite.
19. Since this calendar entry covered substantially more than three days, it was titled "Jaclyn surgery", and Plaintiff told her supervisor the nature of the surgery, it constituted a notice of Plaintiff's need for FMLA leave under 29 C.F.R. § 825.302(c).
20. On 7-10-26, Plaintiff's supervisor terminated her and gave Plaintiff a memorandum explaining the supervisor's reasons.
21. In that regard, the memorandum set out three bullet points.
22. The first was failure to complete an offboarding process for a retiring doctor, resulting in the doctor receiving payroll after his retirement. However, that doctor notified Temple **University**, not TUHS, that he was retiring, and the orthopedics chair informed Plaintiff that the same doctor could potentially still work per diem for TUHS.

23. The second was that Plaintiff "failed to appropriately manage Dr. Hullings' schedule" "[s]ince approximately October 2025".

24. However, Dr. Hullings is an orthopedist, and Plaintiff was relieved from her orthopedics responsibilities on 9-29-25 by the same supervisor as part of accommodating Plaintiff's FMLA leaves and related health issues.

25. The third bullet point is comprised only of generalities such as "lack of follow-through" and "failure to proactively address known concerns".

26. The termination letters relies on Defendant's Corrective Action / Discipline Policy # 950.544.

27. However, the supervisor did not even comply with policy 950.544.

28. Policy 950.544 uses progressive discipline:

    a. first, a verbal discussion that includes a "plan for performance improvement" that is ideally "jointly developed by the supervisor/manager and the employee and will be supported by both".

    b. second, a written warning and action plan that should "clearly define the performance problem(s), set performance expectations with methods and reasonable timetables …".

    c. third, a final written warning that should "describe the nature of the problem(s) and outline the improvements necessary for the person to remain employed";

    d. fourth, termination.

29. The supervisor did not have a verbal discussion with Plaintiff, and the letter does not claim otherwise. The supervisor did not issue a written warning – and since supervisor did not issue a written warning, she certainly did not issue a written warning that "clearly define[s]

the performance problems, set performance expectations with methods and reasonable timetables …”). The supervisor did not issue a final warning.

30. Although the letter says that the alleged performance occurred over 9 months (from October 2025 to July 2026), the letter gives no explanation for why the supervisor ignored the progressive discipline steps over 9 months – or if the misconduct warranted immediate termination, why the supervisor tolerated it for 9 months.

31. The policy allows immediate termination for certain infractions. In that regard, the memorandum accuses Plaintiff of “gross neglect”. However, policy 950.544 gives as examples of gross neglect “job abandonment”, “patient abandonment”, and “unauthorized sleeping while on duty”. Gross neglect is listed alongside such acts as abuse of patients, falsifying records, and no call/no show. Failing to manage a department that Plaintiff was not even overseeing is not remotely close. Moreover, if Defendant actually though that Plaintiff deserved immediate termination for gross neglect, then it would not have tolerated Plaintiff’s alleged gross neglect for 9 months without taking any disciplinary action whatsoever.

32. Policy 950.544 also directs supervisors to “consult Human Resources (HR) as soon as they determine that an employee’s performance or behavior is below acceptable standards.”

33. Firing an employee with no warning, for allegedly 9 months of poor performance, does not make sense given that there is a progressive discipline policy under which supervisors are directed to consult HR “as soon as they determine that an employee’s performance or behavior is below acceptable standards”.

34. Plaintiff’s supervisor fired Plaintiff because of her prior FMLA leave and her request for future FMLA leave.

35. Near the end of 2024, Plaintiff asked her supervisor about FMLA leave for monthly injections of chemo-classified medication, which required her to miss 2-3 hours of work per month. Plaintiff's supervisor answered that Plaintiff did not need FMLA leave. An additional basis for which Plaintiff seeks relief is that Plaintiff should have been given intermittent FMLA leave.

36. As a result of Defendant's conduct, Plaintiff suffered damages.

**Count I**
**FMLA Interference**

37. Plaintiff incorporates by reference the foregoing paragraphs.

38. Plaintiff was an eligible employee under FMLA.

39. Defendant was an employer subject to FMLA.

40. Plaintiff was entitled to FMLA leave.

41. Plaintiff gave notice of her intent to take FMLA leave.

42. Defendant denied Plaintiff benefits to which she was entitled by terminating her for failing to perform a task from which she was excused due to her FMLA leave and terminating her before she could use FMLA leave for her scheduled surgery. Defendant also denied Plaintiff benefits to which she was entitled by not granting her intermittent FMLA leave for monthly injections.

Wherefore, Plaintiff demands judgment in her favor and against Defendant for damages, interest, liquidated damages, costs of suit, attorney's fees, and such other relief as the Court may deem just and proper.

**Count II**
**FMLA Retaliation**

43. Plaintiff incorporates by reference the foregoing paragraphs.

44. Plaintiff was an eligible employee under FMLA.

45. Defendant was an employer subject to FMLA.

46. Plaintiff was entitled to FMLA leave.

47. Plaintiff gave notice of her intent to take FMLA leave.

48. Defendant terminated Plaintiff.

49. The reason for Defendant terminating Plaintiff was Plaintiff's request for FMLA leave and Plaintiff taking FMLA leave.

Wherefore, Plaintiff demands judgment in her favor and against Defendant for damages, interest, liquidated damages, costs of suit, attorney's fees, and such other relief as the Court may deem just and proper.

**Count III**
**FMLA Discrimination**

50. Plaintiff incorporates by reference the foregoing paragraphs.

51. Plaintiff was an eligible employee under FMLA.

52. Defendant was an employer subject to FMLA.

53. Plaintiff was entitled to FMLA leave.

54. Plaintiff gave notice of her intent to take FMLA leave.

55. The reason for Defendant terminating Plaintiff was Plaintiff's request for FMLA leave and Plaintiff taking FMLA leave.

Wherefore, Plaintiff demands judgment in her favor and against Defendant for damages, interest, liquidated damages, costs of suit, attorney's fees, and such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Evan L. Frank
Evan L. Frank, Esq. (311994)
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
efrank@alflaw.net
Counsel for Plaintiff

September 18, 2026

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all counts.

Respectfully submitted,

/s/ Evan L. Frank
Evan L. Frank, Esq. (311994)
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
efrank@alflaw.net
Counsel for Plaintiff

September 18, 2026